## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

Defenders of Wildlife                          **Case No. _____**
1130 17th Street NW
Washington, D.C. 20036

American Lands Alliance
726 7th Street, SE
Washington, D.C. 20003                         **COMPLAINT FOR DECLARATORY
                                               AND INJUNCTIVE RELIEF**

Animal Protection Institute
P.O. Box 22505
Sacramento, CA 95822

Center for Biological Diversity
New Mexico Office
P.O. Box 53166
Pinos Altos, NM 88053

Friends of Animals and Their Environment
("FATE")
2170 St. Clair Avenue
St. Paul, MN 55105

Help Our Wolves Live ("HOWL")
4600 Emerson Avenue South
Minneapolis, MN 55409

The Humane Society of the United States
2100 L Street NW
Washington, DC 20037

Indigenous Environmental Network
P.O. Box 485
Bemidji, MN 56619-0485

Klamath Forest Alliance
P.O. Box 21
Orleans, CA 95556

Minnesota Wolf Alliance
P.O. Box 6351
Minneapolis, MN 55406

RESTORE: The North Woods
9 Union Street
Hallowell, ME  04347

Wildlands Project
P.O. Box 102
Ashland, OR  97520
                          Plaintiffs,

vs.

Gale Norton, Secretary of the Interior
1849 C Street NW
Washington, DC  20240

United States Department of the Interior
1849 C Street NW
Washington, DC  20240

Matthew J. Hogan, Acting Director of the
United States Fish and Wildlife Service
1849 C Street, NW
Washington, D.C.  20240

United States Fish and Wildlife Service,
1849 C Street, NW
Washington, D.C.  20240

                          Defendants.

---

Plaintiffs Defenders of Wildlife, American Lands Alliance, Animal Protection

Institute, Center for Biological Diversity, Friends of Animals and Their Environment

("FATE"), Help Our Wolves Live ("HOWL"), The Humane Society of the United States,

Indigenous Environmental Network, Klamath Forest Alliance, Minnesota Wolf Alliance,

RESTORE: The North Woods, and the Wildlands Project, for their complaint against

defendants Gale Norton, Secretary of the Interior, United States Department of the Interior,

Matthew J. Hogan, Acting Director of the United States Fish and Wildlife Service, and

United States Fish and Wildlife Service, state and allege:

## INTRODUCTION

1.    By filing this complaint, Plaintiffs challenge the decisions of the United States Fish and Wildlife Service ("FWS") and United States Department of Interior to authorize the killing of gray wolves without input from the people in whose name the FWS serves to protect such natural resources.

2.    Specifically, this is a civil action for declaratory and injunctive relief. Plaintiffs seek a declaration from this Court that the United States Department of Interior, through the FWS, violated the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544, and the Administrative Procedure Act, 5 U.S.C. §§ 553-559, 701-706, by issuing permits to the Wisconsin Department of Natural Resources ("Wisconsin DNR") and Michigan Department of Natural Resources ("Michigan DNR") authorizing lethal and non-lethal take of gray wolves (*Canis lupus*) without first providing notice and opportunity for comment as required by law.  Plaintiffs also seek injunctive relief to invalidate the unlawfully issued permits and prevent the taking of gray wolves thereunder.

3.    The FWS's procedural violations are particularly egregious not only because wolves will be killed as a result of unlawfully issued permits, but also because the FWS's decision diminishes the protection afforded by the ESA by authorizing the taking of endangered species for the purposes of depredation control.  In particular, the permits issued to Wisconsin DNR and Michigan DNR significantly expand the scope of takings permitted under ESA Section 10(a)(1)(A), which is a narrow exception that allows taking of endangered species only "for scientific purposes or to enhance the propagation or survival or the affected species . . . ."  16 U.S.C. § 1539(a)(1)(A).  Interpreting this limited exception to

3

authorize takings for depredation control purposes is novel and undermines the purpose of

the ESA. The Plaintiffs were provided neither notice nor opportunity to comment on the

FWS's authorization of killing wolves and expansive interpretation of ESA Section

10(a)(1)(A).

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361, and 2201 as

this action presents cases and controversies under the Endangered Species Act, 16 U.S.C. §§

1531-1544, and the Administrative Procedure Act, 5 U.S.C. §§ 553-559, 701-706.

5.      Venue is proper in the United States Federal District Court for the District of

Columbia pursuant to 28 U.S.C. § 1391(e)(1) because this is a civil action against an agency

or agencies of the United States and is filed in a judicial district in which the Defendants, as

well as some of the Plaintiffs, reside.

6.      Injunctive relief is authorized by Rule 65 of the Federal Rules of Civil

Procedure. The requested relief is proper under 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. §§

705 and 706.

## PARTIES

7.      Plaintiff Defenders of Wildlife ("Defenders") is a non-profit charitable

organization incorporated in 1947 in the District of Columbia, and having its principal place

of business in Washington, D.C. Defenders is dedicated to preserving wildlife and

emphasizing appreciation and protection for all species in their ecological role within the

natural environment. Defenders has approximately 500,000 members and supporters across

the United States, including in Wisconsin and Michigan. Defenders' members enjoy,

appreciate, and benefit from the presence of endangered species and have had a long-

4

standing, nationwide interest in wolf conservation. Defenders' members enjoy and benefit from researching and observing wolves in the wild. Defenders' members are harmed by FWS's issuance of take permits to Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in Wisconsin, Michigan, and the coterminous United States.

8.    Plaintiff American Lands Alliance, formally the Western Ancient Forest Campaign ("American Lands"), represents citizens nationwide who are working to protect wildlife and wild places. American Lands' mission is to protect forest, grassland, and aquatic ecosystems; preserve biological diversity; restore landscape and watershed integrity; and promote environmental justice in connection with those goals. American Lands has been actively involved in the effort to preserve and protect ecosystems that provide sustainable wolf habitat. American Lands' members are engaged in observing and tracking wolves in their ecosystems – including researching the impact of wolves on overall ecosystem health. American Lands accomplishes these goals by strengthening grassroots conservation networks; providing strategic communications, advocacy and other assistance to local conservation groups; and by helping to improve communications among those groups and other segments of society. American Lands is headquartered in Washington, DC, with offices across the country. American Lands' members are harmed by FWS's issuance of take permits to Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in Wisconsin, Michigan, and the coterminous United States.

9.    Plaintiff Animal Protection Institute ("API") was founded in 1968 and is a non-profit organization with more than 85,000 members and supporters that advocate for the

protection of animals from cruelty and exploitation. API's animal protection work includes

monitoring and studying the impacts of agency actions on animals, including wolves and

other carnivores. API regularly submits comments to government agencies concerning

proposed actions that will affect animals. API publishes a magazine and maintains a website

for its members and the general public, and it regularly disseminates information concerning

the treatment of wild animals, including information about government decisions that affect

animals. API's members enjoy wildlife viewing, specifically viewing wolves, as well as

taking pictures and being able to freely appreciate wolves in the wild. API's members are

harmed by FWS's issuance of take permits to Wisconsin DNR and Michigan DNR because

those permits were issued without providing notice and opportunity to comment, and will

result in the presence of fewer wolves in Michigan, Wisconsin, and the coterminous United

States.

10.    Plaintiff Center for Biological Diversity (the "Center") is a non-profit

organization dedicated to protecting and restoring imperiled species and ecosystems. The

Center has over 7,500 members and has been continually involved in recovery efforts for the

Mexican gray wolf over many years. Its founders were among those who sought to compel

the Fish and Wildlife Service in the early 1990s to develop a reintroduction plan for the

Mexican gray wolf, leading to the current reintroduction effort in the Gila and Apache

National Forests. The Center's staff and members have attended a multitude of public

hearings and forums in which reintroduction and management of wolves have been the

subject. The Center has contributed ideas, suggestions and proposals in writing to various

federal and state officials involved in Mexican gray wolf recovery. The Center's members

also observe and enjoy viewing gray wolves in the wild. The Center's members are harmed

6

by FWS's issuance of take permits to Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in the coterminous United States.

11.     Plaintiff Help Our Wolves Live ("HOWL") is a non-profit charitable organization incorporated in 1971 in Minnesota. HOWL is an advocacy group whose purpose is to work for the protection and preservation of the gray wolf and other endangered species. HOWL's members enjoy observing and monitoring wolves in the wild. HOWL uses education and science to discourage misuse and cruelty to wild species caused by humans. HOWL's members are harmed by FWS's issuance of take permits to the Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in Michigan, Wisconsin, and the coterminous United States.

12.     Plaintiff The Humane Society of the United States ("HSUS") is a non-profit charitable organization incorporated in 1954. HSUS is the largest animal protection organization in the world, with over 7 million members. HSUS's mission is to promote the humane treatment of animals and to foster respect, understanding and compassion for all creatures. HSUS regularly submits comments to government agencies concerning proposed actions that will affect animals. HSUS publishes a magazine and maintains a website for its members and the general public, and it regularly disseminates information concerning the treatment of wild animals, including information about government decisions that affect animals. HSUS has been an active advocate for wolf protection and recovery throughout its history. HSUS members study and observe gray wolves in the wild and have attended meetings of state and federal agencies and other interested parties concerning the wolf

7

situation throughout the United States. HSUS members enjoy studying, photographing, and viewing all wildlife in its natural habitat, including wolves, and place a great importance on their ability to freely appreciate the wolves in the wild. These interests will be adversely affected and the Plaintiffs injured if the wolf population is reduced by the number of wolves allowed to be killed under the take permits. Moreover, HSUS members are harmed by FWS's issuance of take permits to the Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in Michigan, Wisconsin, and the coterminous United States.

13.    Plaintiff Klamath Forest Alliance ("KFA") is a non-profit corporation headquartered in the small town of Orleans, California. KFA's mission includes promotion of sustainable ecosystems and sustainable communities in Northern California and Southern Oregon. KFA has approximately 300 members and supporters. KFA works to protect and restore populations of threatened and endangered species. KFA has been involved with gray wolf recovery issues for a number of years. KFA members have attended meetings of state and federal agencies and other interested parties concerning dispersal of the Idaho wolves into Eastern Oregon. KFA's members have studied and looked for the gray wolf in preparation for the wolf's return to areas of Oregon and Northern California. KFA's members are harmed by FWS's issuance of take permits to the Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in the coterminous United States.

14.    Plaintiff Minnesota Wolf Alliance ("MWA"), is a non-profit organization founded in Minneapolis in November of 1997. It is a grassroots membership organization

8

comprised of over 4,000 individual members from across the United States as well as from as

far away as Poland, Russia, and Australia. MWA is dedicated to protecting the wolf in the

state of Minnesota, the United States, and the world. Minnesota has the largest wolf

population in the lower 48 states, as well as the single largest protected wolf population in

the entire world, and MWA works to ensure that this population, as well as other populations

of wolves, remain protected, as they are a precious resource for future generations. MWA's

members participate in wolf awareness, wolf walks, and seek to keep the public informed

about the wolf's status. MWA's members are harmed by FWS's issuance of take permits to

the Wisconsin DNR and Michigan DNR because those permits were issued without

providing notice and opportunity to comment, and will result in the presence of fewer wolves

in Michigan, Wisconsin, and the coterminous United States.

15.     Plaintiff RESTORE: The North Woods ("RESTORE") is a regional

conservation organization dedicated to preserving and restoring wildlife and wilderness in

the North Woods. Founded in 1992, RESTORE has approximately 1,500 members and

operates offices in Maine and Massachusetts. More than a decade ago, RESTORE launched

the first grassroots campaign to promote wolf recovery in the Northeast. Toward that end,

the organization has been involved with public education, advocacy, regional planning, and

coalition building. RESTORE's members participate in wolf research and tracking programs

in the northeastern United States. RESTORE's members are harmed by FWS's issuance of

take permits to the Wisconsin DNR and Michigan DNR because those permits were issued

without providing notice and opportunity to comment, and will result in the presence of

fewer wolves in Michigan, Wisconsin, and the coterminous United States.

16.     Plaintiff Wildlands Project ("Wildlands") was founded in 1990 and has grown

9

to a membership of 4,000. Wildlands' mission is to protect and restore the natural heritage of North America through the establishment of a connected system of wildlands. Wildlands aims to do this through the recovery of whole ecosystems and landscapes in every region of North America. As part of its efforts to stem the disappearance of wildlife, Wildlands has worked to ensure the restoration of wolves in the Southern Rockies and the Northeastern United States and has participated and played a critical role in the Southern Rockies Wolf Restoration Project and CREW. Wildland's members research, monitor, and track gray wolves in the wild. In addition, Wildlands engages in education efforts on the necessity of ecologically effective populations of native species such as the wolf and how those populations positively impact their habitat. Wildlands' members are harmed by FWS's issuance of take permits to the Wisconsin DNR and Michigan DNR because those permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in Michigan, Wisconsin, and the coterminous United States.

17.    Plaintiff Friends of Animals and Their Environment ("FATE") is a Minnesota-based non-profit organization committed to the protection of animals and ecosystems on which they depend. FATE has approximately 200 members who regularly work on behalf of animals, and in particular wolves, through public education and political lobbying, and who enjoy monitoring and observing wolves in the wild. FATE's members are harmed by FWS's issuance of scientific take permits to the Wisconsin DNR and Michigan DNR because the permits were issued without providing notice and opportunity to comment, and will result in the presence of fewer wolves in Michigan, Wisconsin, and the coterminous United States.

18.    Plaintiff Indigenous Environmental Network ("IEN") was formed in 1991 and is an international network of approximately 150 affiliate organizations and community

10

groups. IEN provides these affiliate organizations with information and technical support regarding environmental problems faced by Indigenous communities. IEN's affiliates are comprised of Indigenous people for whom gray wolves play an important role in traditional religious and cultural beliefs. For some tribes, wolves are essential to the survival and success of many of their sacred ceremonies. Furthermore, IEN's member organizations have members who enjoy observing wolves in the wild. IEN's members are harmed by FWS's issuance of scientific take permits to the Wisconsin DNR and Michigan DNR because the permits were issued without providing IEN notice and opportunity to comment, and will result in the presence of fewer wolves in Michigan, Wisconsin, and the coterminous United States.

19.      Plaintiffs have an interest in the enforcement and administration of the Endangered Species Act that extends beyond the generalized interest all members of the public have in the enforcement of the law. Plaintiffs are organizations dedicated to the protection and preservation of gray wolves in the United States. Plaintiffs and their members observe and monitor gray wolves in the wild for enjoyment, education, scientific, religious, and cultural reasons. Final administrative actions of the FWS and Department of Interior, taken in contravention of existing law, directly injure Plaintiffs and their members by authorizing the lethal and non-lethal take of gray wolves without opportunity for public comment even though such takes will diminish the number of wolves in the coterminous United States.

20.      Defendants Gale Norton, Secretary of the Interior, United States Department of the Interior and Matthew J. Hogan, Acting Director of the FWS, are charged with the administration of the Endangered Species Act. Defendants are responsible for ensuring the

11

continued viability of species listed as endangered or threatened under the Endangered

Species Act, and for ensuring that decisions made regarding endangered or threatened

species comply with the laws of the United States, including the ESA and the APA.

Defendants are sued in their official capacities.

## STATUTORY AND REGULATORY BACKGROUND

21.    When the ESA was enacted in 1973, Congress declared that developing and

maintaining "conservation programs which meet national and international standards is a key

. . . to better safeguarding, for the benefit of all citizens, the Nation's heritage in fish,

wildlife, and plants." 16 U.S.C. § 1531(a)(5). Indeed, the Supreme Court has recognized

that, by enacting the ESA, Congress "intended endangered species to be afforded the highest

priorities." Tennessee Valley Authority v. Hill, 437 U.S. 153, 174 (1978).

22.    The ESA mandates that "all Federal departments and agencies shall seek to

conserve endangered species and threatened species and shall utilize their authorities in

furtherance of the purposes of this chapter." 16 U.S.C. § 1531(c)(1). The stated purpose of

the ESA is "to provide a means whereby the ecosystems on which endangered and threatened

species depend may be conserved, [and] to provide a program for the conservation of such

endangered species and threatened species." 16 U.S.C. § 1531(b).

23.    Section 4 of the ESA, 16 U.S.C. § 1533, requires the Secretary of Interior

("Secretary") to establish a list species of wildlife or plants that are endangered or threatened

with extinction. 16 U.S.C. § 1533(c)(1). The Secretary's regulations with regard to listing,

and the lists of the species themselves, are found at 50 C.F.R. Part 17.

24.    The gray wolf (*Canis lupus*) is listed as an endangered species in all states in

the coterminous United States except for the State of Minnesota, where it is classified as

12

threatened.

    25.    The fundamental method by which the ESA protects endangered species is its aggressive prohibition on taking any endangered species within the United States. 16 U.S.C. § 1538. Defined broadly, the term "take" means to "harass, harm, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." 16 U.S.C. § 1532(19).

    26.    As a narrow exception to the ESA's blanket prohibition on taking endangered species, Section 10(a)(1)(A) of the ESA allows the Secretary of the Interior to issue permits authorizing the taking of an endangered species "for scientific purposes or to enhance the propagation or survival or the affected species . . . ." 16 U.S.C. § 1539(a)(1)(A).

    27.    Before issuing permits under Section 10(a)(1)(A), the Secretary must comply with certain mandatory notice and comment requirements. As set forth in Section 10(c) of the ESA, the Secretary "shall publish notice in the Federal Register of each application for an exemption or permit" that is made under Section 10(a). 16 U.S.C. § 1539(c). See also 50 C.F.R. § 17.22. In addition, the Secretary "shall" provide a 30 day comment period during which interested parties can submit "written data, views, or arguments with respect to the application." 16 U.S.C. § 1539(c). See also 50 C.F.R. § 17.22. Further, the Secretary "shall" make available to the public any information received as part of applications for permits under Section 10(a). 16 U.S.C. § 1539(c).

    28.    Failure to provide adequate notice and opportunity for comment, and failure to make available information submitted as part of the application for a Section 10(a)(1)(A) permit, violates the requirements of ESA Section 10(c). See Gerber v. Norton, 294 F.3d 173 (D.C. Cir. 2002) (holding that the FWS violated Section 10(c) of the ESA when it issued a ·

13

permit under Section 10(a) without making available to the public all information obtained as part of the permit application).

29.    Procedural violations of the ESA under Section 10(c) are subject to judicial review under the APA. See Bennett v. Spear, 520 U.S. 154, 173, 175 (holding that substantive ESA violations are reviewable under the ESA citizen suit provision and other violations are reviewable under the APA); Gerber, 294 F.3d at 178 (reviewing under the APA the agency's alleged ESA Section 10(c) procedural violations).

30.    Challenges to ESA violations made pursuant to the APA are not subject to the 60 day notice of intent to sue requirement that applies to actions filed under the ESA's citizen suit provision, 16 U.S.C. § 1540(g). Cf. Sierra Club v. Bosworth, 352 F. Supp. 2d 909, 920 (D. Minn. 2005) (holding that the "notice of intent to sue under the ESA is unnecessary in light of Bennett v. Spear" for cases challenging an agency decision under the APA).

31.    The APA, 5 U.S.C. §§ 553-559, 701-706, provides for judicial review of final agency action, such as the FWS's issuance of permits under Section 10(a) of the ESA. A reviewing court shall compel agency action unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1), and hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, 5 U.S.C. § 706(2)(A). A reviewing court shall also set aside agency action, findings, and conclusions found to be without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

32.    ESA take permits issued in violation of Section 10(c) are unlawful agency actions conducted "without observance of procedure require by law" and "otherwise not in

14

accordance with law." See Gerber, 294 F.3d at 186. Further, because the FWS issued

Section 10(a)(1)(A) permits to the Wisconsin and Michigan DNRs in contravention of the

ESA, those actions are "arbitrary, capricious, and an abuse of discretion." 5 U.S.C. §

706(2)(A).

## FACTS

33.    On April 1, 2003, the FWS issued the Final Rule to Reclassify and Remove

the Gray Wolf from the List of Endangered and Threatened Wildlife in Portions of the

Conterminous United States. 68 Fed. Reg. 15,804 (April 1, 2003) ("Final Rule"). The Final

Rule reduced the protection afforded the gray wolf by changing the status of the species from

endangered to threatened.

34.    By changing the status of the gray wolf to "threatened," the Secretary could

take advantage of Section 4(d) of the ESA, 16 U.S.C. § 1533(d), which allows the Secretary

to "issue such regulations as she deems necessary and advisable to provide for the

conservation of the species." 16 U.S.C. § 1533(d). Accordingly, in the Final Rule, the

Secretary used her authority under Section 4(d) to institute programs allowing state and tribal

authorities, as well as private parties, to take depredating wolves by lethal and non-lethal

means. 68 Fed. Reg. at 15,863-68.

35.    On January 31, 2005, the Final Rule was enjoined and vacated by Defenders

of Wildlife v. Norton, 354 F. Supp. 2d 1156 (D. Or. 2005). Because the Final Rule was

vacated, wolves regained their "endangered" status in all states except Minnesota.

Consequently, the Secretary no longer had authority under Section 4(d) of the ESA to

institute its wolf depredation abatement programs. This meant that state entities such as

Wisconsin DNR and Michigan DNR lost their authority to take wolves in response to

15

depredation complaints.

36.    On February 11, 2005, Wisconsin DNR submitted a permit application to the FWS under ESA Section 10(a)(1)(A), which allows the issuance of permits to take endangered species "for scientific purposes or to enhance the propagation or survival of the affected species." 16 U.S.C. § 1539(a)(1)(A). Specifically, Wisconsin DNR requested authority to use lethal and non-lethal force to control depredating wolves in Wisconsin.

37.    Similarly, on February 22, 2005, Michigan DNR submitted a permit application to the FWS pursuant to ESA Section 10(a)(1)(A) requesting authority to use lethal and non-lethal force to control depredating wolves in Michigan.

38.    On April 1, 2005, the FWS issued a permit authorizing Wisconsin DNR to take gray wolves while conducting certain activities involving scientific research, enhancement of propagation, or enhancement of survival. In particular, the permit authorizes Wisconsin DNR to use lethal or non-lethal means to take up to 34 wolves during 2005 for depredation control.

39.    Similarly, on April 19, 2005, the FWS issued a permit authorizing Michigan DNR to take gray wolves while conducting certain activities involving scientific research, enhancement of propagation, or enhancement of survival. The permit specifically authorizes Michigan DNR to use lethal or non-lethal means to take up to 20 wolves during 2005 for depredation control.

40.    On information and belief, Defendants have never, prior to April 1, 2005, issued permits under ESA Section 10(a)(1)(A) for the purpose of depredation control.

41.    Defendants' issuance of Section 10(a)(1)(A) permits to Wisconsin DNR and Michigan DNR is an attempt to implement the Section 4(d) wolf depredation abatement

16

Act with regard to endangered species.

45.    ESA Section 10(c), 16 U.S.C. § 1529(c), unambiguously requires the FWS to provide notice and an opportunity to comment on permit applications submitted pursuant to ESA Section 10(a). In addition, the FWS is required to make any information accompanying such permit requests available to the public.

46.    The FWS did not publish any notice in the Federal Register announcing that Wisconsin DNR and Michigan DNR submitted permit applications pursuant to ESA Section 10(a)(1)(A).

47.    The FWS did not provide any opportunity for comment on the requested permits.

48.    Before issuing the Section 10(a)(1)(A) permits to the Wisconsin and Michigan DNRs, the FWS did not make available for public review any information accompanying the permit applications submitted by Wisconsin DNR or Michigan DNR. Plaintiffs have had to submit a Freedom of Information Act ("FOIA") request in order to obtain documents or records that might explain the process and reasoning underlying the FWS decisions regarding the issuance of the Section 10(a)(1)(A) permits to Wisconsin and Michigan.

49.    Plaintiffs were injured by the lack of notice and opportunity to comment on the Section 10(a)(1)(A) permits issued to Wisconsin and Michigan DNR.

50.    Not only are the Plaintiffs dedicated to wolf conservation and recovery in the United States, but the Plaintiffs have been a part of the successful challenge to the Final Rule in Defenders of Wildlife v. Norton, 354 F. Supp. 2d 1156 (D. Or. 2005). The Plaintiffs are also familiar with the depredation abatement programs that FWS is attempting to implement through Section 10(a)(1)(A) because these programs were part of the Section 4(d) rules that

were invalidated along with the Final Rule. Given their interest and experience, the Plaintiffs are especially well-equipped to provide relevant input regarding the issuance of permits under Section 10(a)(1)(A) of the ESA.

51.    Because Plaintiffs were not given notice of the permit requests at issue, and because Plaintiffs were not afforded any opportunity to comment on those requests, the FWS issued permits to kill wolves in Wisconsin and Michigan without addressing, or even allowing expression on the record of, concerns by individuals that would be injured by the agency's decision.

52.    In addition, because the FWS did not make publicly available information accompanying the permit requests, Plaintiffs do not know the grounds on which the FWS justifies the implementation of depredation abatement programs under the auspices of Section 10(a)(1)(A) permits, when the ESA authorizes such permits only "for scientific purposes or to enhance the propagation or survival or the affected species," 16 U.S.C. § 1539(a)(1)(A).

53.    The FWS's procedural violations are particularly egregious because the FWS's issuance of Section 10(a)(1)(A) permits to authorize taking of endangered species for depredation control purposes is an affront to the protections afforded under the ESA by significantly broadening the scope of an otherwise narrow take exception. Issuing the permits without providing an opportunity for public comment deprived Plaintiffs of their right to challenge the propriety – before the fact – of expanding the scope of takes authorized under Section 10(a)(1)(A) to include depredation control.

19

## COUNT I

**(Violation of the ESA, the ESA Implementing Regulations, and the APA)**
**(Permit Issued to Michigan DNR)**

54.    The Plaintiffs restate and reallege the foregoing allegations as if fully stated
herein.

55.    The Defendants' issuance of a permit to Michigan DNR authorizing the take
of gray wolves pursuant to ESA Section 10(a)(1)(A), 16 U.S.C. § 1539(a)(1)(A), constitutes
final agency action.

56.    The Defendants' issuance of the Section 10(a) permit to Michigan DNR
violates ESA Section 10(c), 16 U.S.C. § 1539(c), because:

(a)  The Defendants failed to provide notice in the Federal Register for the
application requesting a permit under ESA Section 10(a), 16 U.S.C. § 1539(a);

(b) The Defendants failed to provide interested parties with the opportunity to
comment on the application for thirty days after the date of notice in the Federal
Register; and

(c)  The Defendants failed to make available to the public any information
received as a part of the permit application.

57.    The Defendants' issuance of a Section 10(a) permit to Michigan DNR violates
50 C.F.R. § 17.22, the FWS implementing regulations, because:

(a)  The Defendants failed to provide notice in the Federal Register for the
application requesting a permit under ESA Section 10(a), 16 U.S.C. § 1539(a);

(b)  The Defendants failed to provide interested parties with the opportunity to comment on the application for thirty days after the date of notice in the Federal Register; and

(c) The Defendants failed to make available to the public any information received as a part of the permit application.

58.    The Defendants' disregard for the ESA Section 10(c) procedural requirements while issuing a Section 10(a) permit to Michigan DNR violates the APA, 5 U.S.C. § 706(2)(A), because such issuance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  The issuance of that permit also violates the APA, 5 U.S.C. § 706(2)(D), because it was without observance of procedure required by law.

59.    The Defendants' actions threaten imminent and irreparable harm to the gray wolves in Michigan and to the Plaintiffs' interest in and enjoyment of gray wolves. Therefore, this Court should grant an injunction under 5 U.S.C. § 706(1) preventing Michigan DNR from taking any gray wolves pursuant to the unlawfully issued Section 10(a)(1)(A) permit.  Plaintiffs have no adequate remedy at law.

## COUNT II

### (Violation of the ESA, the ESA Implementing Regulations, and the APA) (Permit Issued to Wisconsin DNR)

60.    The Plaintiffs restate and reallege the foregoing allegations as if fully stated herein.

61.    The Defendants' issuance of a permit to Wisconsin DNR authorizing the take of gray wolves pursuant to ESA Section 10(a)(1)(A), 16 U.S.C. § 1539(a)(1)(A), constitutes final agency action.

21

62.    The  Defendants' issuance of the Section 10(a) permit to Wisconsin DNR violates ESA Section 10(c), 16 U.S.C. § 1539(c), because:

(a)  The Defendants failed to provide notice in the Federal Register for the application requesting a permit under ESA Section 10(a), 16 U.S.C. § 1539(a);

(b) The Defendants failed to provide interested parties with the opportunity to comment on the application for thirty days after the date of notice in the Federal Register; and

(c) The Defendants failed to make available to the public any information received as a part of the permit application.

63.    The  Defendants' issuance of the Section 10(a) permit to Wisconsin DNR violates 50 C.F.R. § 17.22, the FWS implementing regulations, because:

(a)  The Defendants failed to provide notice in the Federal Register for the application requesting a permit under ESA Section 10(a), 16 U.S.C. § 1539(a);

(b)  The Defendants failed to provide interested parties with the opportunity to comment on the application for thirty days after the date of notice in the Federal Register; and

(c) The Defendants failed to make available to the public any information received as a part of the permit application.

64.    The Defendants' disregard for the ESA Section 10(c) procedural requirements while issuing a Section 10(a) permit to Wisconsin DNR violates the APA, 5 U.S.C. § 706(2)(A), because such issuance is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  The issuance of that permit also violates the APA, 5 U.S.C. § 706(2)(D), because it was without observance of procedure required by law.

65.    The Defendants' actions threaten imminent and irreparable harm to the gray wolves in Wisconsin and to the Plaintiffs' interest in and enjoyment of gray wolves. Therefore, this Court should grant an injunction under 5 U.S.C. § 706(1) preventing Wisconsin DNR from taking any gray wolves pursuant to the unlawfully issued Section 10(a)(1)(A) permit.  Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for following relief:

66.    A declaration that the FWS's actions in issuing permits to Wisconsin DNR and Michigan DNR authorizing the take of gray wolves under ESA Section 10(a)(1)(A) are in violation of the ESA and the APA;

67.    An order vacating the permits issued to Wisconsin DNR and Michigan DNR that authorize the take of gray wolves under ESA Section 10(a)(1)(A);

68.    An order enjoining Wisconsin DNR and Michigan DNR from taking any wolves pursuant to the permits issued under ESA Section 10(a)(1)(A);

69.    An order that the plaintiffs herein recover from the Defendants their costs, including reasonable attorneys' fees, incurred in connection with this dispute, as provided for under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), and other applicable law; and

70.    Any other, further, or different relief as the nature of this case may require or as the Court deems just and proper.

Dated: August 4, 2005

Jason C. Rylander, DC # 474995
Defenders of Wildlife
1130 Seventeenth Street, NW

23

Washington, D.C. 20036-4604
jrylander@defenders.org
(202) 682-9400

Brian B. O'Neill, MN # 82521
boneill@faegre.com
Richard A. Duncan, MN # 192983
rduncan@faegre.com
Elizabeth H. Schmiesing, MN # 229258
eschmiesing@faegre.com
Colette B. Routel, MN # 0313336
croutel@faegre.com
Sanne H. Knudsen, MN # 0344552
sknudsen@faegre.com
FAEGRE & BENSON LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)

Attorneys for Plaintiffs Defenders of
Wildlife, American Lands Alliance, Animal
Protection Institute, Center for Biological
Diversity, Friends of Animals and Their
Environment ("FATE"), Help Our Wolves
Live ("HOWL"), The Humane Society of the
United States, Indigenous Environmental
Network, Klamath Forest Alliance,
Minnesota Wolf Alliance, RESTORE: The
North Woods, Wildlands Project.