UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Defenders of Wildlife, American Lands Alliance, Animal Protection Institute, Center for Biological Diversity, Friends of Animals and Their Environment ("FATE"), Help Our Wolves Live ("HOWL"), The Humane Society of the United States, Indigenous Environmental Network, Klamath Forest Alliance, Minnesota Wolf Alliance, RESTORE: The North Woods, Sierra Club, and the Wildlands Project, | Civ. File No: 1:05CV-01573-ESH |
| Plaintiffs, | |
| v. | |
| Gale Norton, Secretary of the Interior, United States Department of the Interior, Matthew J. Hogan, Acting Director of the United States Fish and Wildlife Service, and United States Fish and Wildlife Service, | |
| Defendants. | |

**AFFIDAVIT AND APPLICATION
FOR PLAINTIFFS' FEES AND OTHER EXPENSES**

STATE OF MINNESOTA   )
                     ) ss.
COUNTY OF HENNEPIN   )

Elizabeth H. Schmiesing, being duly sworn, states:

This is an application for fees and other expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"), incurred by the plaintiffs, Defenders of Wildlife, American Lands Alliance, Animal Protection Institute, Center for Biological Diversity, Friends of Animals and Their Environment ("FATE"), Help Our Wolves Live ("HOWL"), The Humane Society of

the United States, Indigenous Environmental Network, Klamath Forest Alliance, Minnesota Wolf Alliance, RESTORE: The North Woods, Sierra Club, and the Wildlands Project (collectively the "Plaintiffs") in connection with this action.

## I.   EQUAL ACCESS TO JUSTICE ACT

The EAJA provides that a prevailing party may recover its fees and other expenses in an action against a federal agency:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d) (emphasis added).  Upon timely application, a court is therefore compelled to make an award of fees and other expenses where:  (1) the movant qualifies as a "party;" (2) the movant prevailed in the action; and (3) the United States's litigation position was not substantially justified.  Id.  The Plaintiffs easily satisfy these requirements.

### A.   The Plaintiffs Are Qualified Parties

To recover fees and other expenses under the EAJA, a movant must first demonstrate that it constitutes a qualifying "party," which is defined by statute to include:

> any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 . . . [as] exempt from taxation . . . may be a party regardless of the net worth of such organization . . . .

28 U.S.C. § 2412(d)(2)(B).  The following Plaintiffs meet the EAJA's party requirements:

|  | Net Worth Less Than $7,000,000 | Less Than 500 Employees |
|---|---|---|
| Defenders of Wildlife | X | X |
| American Lands Alliance | X | X |
| Animal Protection Institute | X | X |
| Center for Biological Diversity | X | X |
| Friends of Animals and Their Environment | X | X |
| Help Our Wolves Live | X | X |
| The Humane Society of the United States | X | X |
| Indigenous Environmental Network | X | X |
| Klamath Forest Alliance | X | X |
| Minnesota Wolf Alliance | X | X |
| RESTORE: The North Woods | X | X |
| The Wildlands Project | X | X |

In fact, the only plaintiff that does not meet the EAJA's net worth and employee size requirements is the Sierra Club.[1]

The Sierra Club's ineligibility for "party" status under the EAJA does not preclude an award of fees and other expenses here. The lead plaintiff in this case has been the Defenders of Wildlife ("Defenders"), which has been the primary client contact for all litigation decisions.

---

[1] The Sierra Club is organized under section 501(c)(4) of the Internal Revenue Code. 26 U.S.C. § 501(c)(4). The Club has a restricted endowment fund which, when taken together with other assets, results in a net worth in excess of $7 million.

The local counsel in this case, Jason C. Rylander, is an attorney with Defenders of Wildlife. In addition, Defenders is liable to Faegre & Benson for all costs incurred during this litigation.[2]

The Sierra Club is not liable to Faegre & Benson for any costs incurred in connection with this litigation. The Sierra Club will not share in any fees or other expenses awarded pursuant to this petition. Further, Sierra Club has not played on major role in this litigation, as evidenced by the fact that the Sierra Club was not a plaintiff to this litigation until an amended complaint was filed on September 1, 2005 ("Amended Complaint"). The Amended Complaint was not filed until after the preliminary injunction motion – a motion that resulted in the Court's issuance of a permanent injunction and the Plaintiffs' success on the merits. Because the Sierra Club is one of thirteen plaintiff organizations, counsel would have had to undertake the same research, drafting, and other litigation efforts regardless of Sierra Club's participation. The Sierra Club's ineligibility, therefore, does not affect the fees awarded to Plaintiffs in this case. See Taucher v. Rainer, 292 F. Supp. 2d 111, 120-21 (D.D.C. 2003) (rejecting the argument that a fee award must be apportioned upon showing the existence of an ineligible party, accepting instead that the relevant question is whether the action of the eligible plaintiffs and their counsel

---

[2] Faegre & Benson has represented the plaintiffs on a *pro bono* basis, and as a result, charged Defenders only for costs incurred. This does not affect the fee analysis, however, because the United States Court of Appeals for the District of Columbia has repeatedly held that an award of attorney fees under the EAJA is appropriate despite *pro bono* representation. See, e.g., Taucher v. Rainer, 292 F. Supp. 2d 111, 120-21 (D.D.C. 2003) (recognizing that the EAJA's attorney fees provision is no less applicable where the client is represented by *pro bono* counsel, in part because of the "necessity of encouraging *pro bono* counsel to undertake attacks on improper government action"), reversed on other grounds, 396 F.3d 1168 (D.C. Cir. 2005).

was necessary and reasonable to the success of the litigation), reversed on other grounds, 396 F.3d 1168 (D.C. Cir. 2005). [3]

### B.     The Plaintiffs Prevailed

The EAJA also requires a party seeking fees and other expenses to have "prevailed" in the litigation.  The United States Supreme Court has held that this requirement is satisfied if the plaintiffs "succeed[ed] on any significant issue in [the] litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Kerin v. U.S. Postal Service, 218 F.3d 185, 189 n.1 (2d Cir. 2000); Waterman S.S. Corp. v. Maritime Subsidy Bd., 901 F.2d 1119, 1121 (D.C. Cir. 1990).  Here, in response to the Plaintiffs' motion for a preliminary injunction, this Court granted a permanent injunction in its Order dated September 13, 2005.  In doing so, this Court concluded (1) that the Defendants, United States Fish and Wildlife Service ("FWS") et al., violated the nondiscretionary procedural mandates of Section 10(c) of the Endangered Species Act ("ESA") by issuing permits to the Michigan Department of Natural Resources and the Wisconsin Department of Natural Resources without providing notice and comment, and (2) that any further taking of endangered wolves under the unlawfully issued permits violated the ESA.  Given that the Plaintiffs prevailed on the merits of their claim and given that the Court issued a permanent injunction prohibiting any further activities under the unlawfully issued permits, there can be no doubt that the Plaintiffs are "prevailing parties" under the EAJA.

---

[3] Alternatively, if this Court chooses not to follow Taucher, it should reduce the EAJA award on a *pro rata* basis to reflect the portion of the award that would otherwise have gone to an ineligible party – an approached invoked by the Second Circuit Court of Appeals in Sierra Club v. United States Army Corps of Engineers, 776 F.2d 383, 393-94 (2d Cir. 1985).  Such an apportionment would only be proper, however, for fees incurred after Sierra Club became a party to the litigation on September 1, 2005.

### C. The Government Defendants Were Not Substantially Justified

Because the Plaintiffs are the prevailing parties in this action, they are entitled to fees and other expenses unless the FWS can prove that its litigation position was substantially justified. Lundin v. Mecham, 980 F.2d 1450, 1459 (D.C. Cir. 1992) (concluding that the United States bears the burden of proving that its litigation position was substantially justified). As the Court stated in Douglas v. Baker, 809 F. Supp. 131 (D.D.C. 1992):

> The analysis is bifurcated: the Court must determine not only whether the government was substantially justified in its litigation position, but also whether it was substantially justified in the action or omission that gave rise to the litigation. As this Court has explained, "there needs to be a good reason for the [government's] action and a good reason for fighting about it."

Id. at 133 (citations omitted). The agency's position is not substantially justified if it is "flawed from the outset." Lundin v. Mecham, 980 F.2d at 1461. See also H.R. Rep. No. 96-1418 at 18, reprinted in 1980 U.S.C.C.A.N. 4984, 4997 (noting, in the legislative history for the EAJA, that it is "particularly appropriate to place the burden on the government" to prove that its actions were substantially justified, because this will "encourage[] parties to contest action which they believe to be unreasonable").

The FWS cannot meet its burden of showing that its actions were substantially justified. This case involved a challenge to the FWS's issuance of permits under Section 10(a)(1)(A) of the Endangered Species Act authorizing the Michigan Department of Natural Resources and the Wisconsin Department of Natural Resources to kill gray wolves for the purposes of depredation control. The FWS issued the Section 10(a)(1)(A) permits to the Michigan and Wisconsin DNRs without adhering to any of the procedural safeguards mandated by the ESA. Section 10(c) of the ESA unambiguously requires the FWS to provide notice and opportunity to comment whenever the FWS receives a request for a Section 10 take permit:

> The Secretary shall publish notice in the Federal Register of each application for an exemption or permit which is made under this section. Each notice shall invite the submission from interested parties, within thirty days after the date of the notice, of written data, views, or arguments with respect to the application . . . . Information received by the Secretary as a part of any application shall be available to the public as matter of public record at every stage of the proceeding. 16 U.S.C. § 1539(c).

Contrary to the unambiguous, nondiscretionary mandates of ESA Section 10(c), 16 U.S.C. § 1539(c), the FWS did not provide any notice or opportunity to comment before issuing Section 10(a)(1)(A) permits to Michigan and Wisconsin.

The FWS's disregard for the procedural mandates of Section 10(c) was so blatant that, in response to Plaintiffs' motion for preliminary injunction, the FWS offered no argument for the failure to comply with the Section 10(c) requirements. Indeed, the FWS conceded that the Plaintiffs were likely to succeed on the merits. Because of the FWS's utter lack of explanation for its unlawful action, the Court, when presented with a motion for preliminary injunction, granted a permanent injunction and ruled in favor of the Plaintiffs on the merits. As evidenced by the FWS's concession that Plaintiffs would succeed on the merits, and the Court's conversion of the preliminary injunction motion into a decision on the merits, the FWS's position was not substantially justified. The Plaintiffs are therefore entitled to an award of fees and other expenses.

## II.   COMPUTATION OF FEES AND OTHER EXPENSES

The Plaintiffs prevailed on all of the issues raised in this litigation, and therefore, are entitled to an award of all fees and other expenses incurred in this action. The term "fees and other expenses" is defined in the EAJA as follows:

> "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report,

test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees . . . .

28 U.S.C. § 2412(d)(2)(A). Accordingly, the attorney fees, expert fees and other expenses incurred by the Plaintiffs are discussed and itemized below.

    **A.**    **Attorney Fees**

        **1.**    **Lawyers and Staff Involved**

This case was staffed at Faegre & Benson by the following persons:

| | |
|---|---|
| Brian B. O'Neill | Strategy |
| Elizabeth H. Schmiesing | Supervising attorney, editing pleadings and briefs |
| Richard A. Duncan | Assisting preparation for oral argument |
| Sanne Knudsen | Drafting pleadings and briefs, oral argument |
| Colette Routel | Assisting preparation of pleadings |
| Susan Lahr (paralegal) | Document gathering |
| David Shriver (law clerk) | Research |

Jason C. Rylander, in-house counsel at Defenders of Wildlife and admitted into practice in the District of Columbia, served as local counsel. In addition, Patricia Lane, an in-house attorney at The Humane Society of the United States, devoted time to this litigation. Short professional biographies or declarations of the above lawyers and paraprofessionals are included at Tab 1.

        **2.**    **Faegre & Benson's Normal Billing Guidelines**

The EAJA provides that attorneys fees shall be calculated as follows:

The amount of fees awarded under this subsection shall be based on prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a

>special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2). Thus, calculation of fees is determined in the first instance by looking to prevailing market rates.

Ordinarily, an attorney's hourly billing rate can serve the Court as a good guide to determining the market rate for that attorney. <u>Lebron v. Washington Metro. Area Transit Auth.</u>, 665 F. Supp. 923, 925 (D.D.C. 1987), <u>citing</u> <u>Laffey v. Northwest Airlines, Inc.</u>, 746 F.2d 4, 18-25 (D.C. Cir. 1984). The fees normally charged at present by the Faegre & Benson attorneys and staff representing the Plaintiffs in this action are as follows:

| | |
|---|---|
| Brian B. O'Neill | $ 490 per hour |
| Richard A. Duncan | $ 340 per hour |
| Elizabeth H. Schmiesing | $ 310 per hour |
| Sanne Knudsen | $ 230 per hour |
| Colette Routel | $ 210 per hour |

In addition to an award of fees for time spent by Faegre & Benson attorneys on this litigation, the EAJA authorizes an award for time spent by paralegals and law clerks. <u>Hirschey v. F.E.R.C.</u>, 777 F.2d 1 (D.C. Cir. 1985) (paralegals' work compensable under EAJA); <u>United States v. Waksberg</u>, 942 F. Supp. 40, 44 (D.D.C. 1996). The present regular billing rates charged by Faegre & Benson for the paraprofessionals and law clerks who have worked on this action are as follows:

| | |
|---|---|
| Susan Lahr (paralegal) | $ 175 per hour |
| David Shriver (law clerk) | $ 140 per hour |

These rates reflect the prevailing market rates in Minneapolis, Minnesota for services of the type and quality performed in this case. The regular hourly rates for Faegre & Benson attorneys have

been approved repeatedly by federal courts as reasonable. See, e.g., Defenders of Wildlife v. Administrator, EPA, 700 F. Supp. 1028, 1032 (D. Minn. 1988); Gopher Oil Co. v. Union Oil Co., 757 F. Supp. 998, 1011 (D. Minn. 1991). Since these cases were decided, the firm's normal hourly rates have been adjusted to reflect additional experience and increases in the general cost of legal services. See also McDonald v. Johnson & Johnson, 546 F. Supp. 324, 332 (D. Minn. 1982), vacated on other grounds, 722 F.2d 1390 (8th Cir. 1983) (taking judicial notice of prevailing hourly rates in the Minneapolis - St. Paul legal market in 1982 of $130 to $300 for senior attorneys and $60 and $100 for associates); Kleeman v. Cadwell, 414 N.W.2d 433, 440 (Minn. Ct. App. 1987) (taking judicial notice of prevailing hourly rates in Minneapolis - St. Paul of $100 to $250 per hour for competent trial attorneys).

In addition, Faegre & Benson and our clients take the following factors into account in determining a fee for a particular matter:

1. The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

2. The degree of responsibility assumed;

3. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment;

4. The fee customarily charged in this area for similar legal services;

5. The amount involved and the results obtained;

6. The time limitations imposed by the client or by the circumstances;

7. The nature and length of the professional relationship with the client;

8. The volume of legal services for the particular client;

9. The experience, reputation, and ability of the lawyer or lawyers performing the services;

10. Whether the fee is fixed or contingent.

These factors are derived from the Minnesota Rules of Professional Conduct, Rule 1.5 (fees).

### 3.     Market Rates for Jason Rylander and Patricia Lane

Mr. Rylander is a salaried in-house counsel to plaintiff Defenders of Wildlife. This Court has strict local rules about pro hac vice practice, and D.C. counsel was necessary to prosecute this action. Mr. Rylander was more efficient in the conduct of his tasks as local counsel than the alternative of affiliating with a private D.C. firm. Patricia Lane, a salaried in-house attorney to The Humane Society of the United States, also devoted time to this litigation. The Laffey matrix provides that the market rates for both Mr. Rylander and Ms. Lane would significantly exceed the EAJA cap. See Role Models Am., Inc. v. Brownlee, 353 F.3d 962, 967 (D.C. Cir. 2004) (noting that the Laffey matrix establishes appropriate guidelines for attorney rates in Washington, D.C.); Sierra Club v. EPA, 769 F.2d 796, 808 (D.C. Cir. 1985) (calculating non-profit attorney rates according to Laffey matrix and affidavit testimony regarding market rates); http://www.usdoj.gov/usao/dc/Divisions/Civil_Division/Laffey_Matrix_5.html (providing Laffey matrix and explanation).

### 4.     Cost of Living Adjustment

The hourly rates for the attorneys who worked on this case exceed the $125 per hour cap set by the EAJA. Plaintiffs are entitled to an adjustment in the $125 per hour rate under the terms of the EAJA based on increases in the cost of living since March 1996, when the EAJA statutory rate was last amended.

The language of the EAJA providing for cost of living increases has been held to be a strong indication that Congress intended cost of living increases to be granted routinely:

> [W]e hold, consistent with the great weight of authority, that
> Congress did intend to provide an allowance for a cost-of-living
> increase. If Congress had intended to deny such relief, that

>language in the statute would presumably have been deleted, not
>reenacted. . . . Except in unusual circumstances, therefore, if there
>is a significant difference in the cost of living since 1981 [now,
>1996] in a particular locale that would justify an increase in the
>fee, then an increase should be granted.

Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir. 1988) (citations omitted). See also Wilkett v. I.C.C., 844 F.2d 867, 874 and n.3 (D.C. Cir. 1988) (recognizing that "section 2412(d)(2)(A) explicitly permits adjustments to the cap to compensate attorneys for 'increases in the cost of living'"); Shu Chen v. Slattery, 842 F. Supp. 597, 600 (D.D.C. 1994). Cf. Pierce v. Underwood, 487 U.S. 552 (1988).

Consumer Price Index figures from the United States Department of Labor indicate that the cost of living in all U.S. metropolitan areas has increased 24.8 percent since the March 1996 effective date of the most recent amendments to the hourly rate provisions of the EAJA. Applying this figure to the $125 per hour statutory rate, the cost of living adjusted cap for attorneys' fees under the EAJA is now $156 per hour.[4] Thus, aside from the law clerk billing at less than $156, the Court should calculate fees based on an hourly rate of $156.

### 5. Itemization of Fees for Lawyers and Staff

The Plaintiffs are entitled to recover fees for all time Faegre & Benson attorneys, paralegals and law clerks spent on this action from the date the complaint was filed with this Court. This includes time spent preparing this fee petition. See Wilkett, 844 F.2d at 878; Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 528 (D.C. Cir. 1985); Sinh Thi Nong v. Reno, 28 F. Supp. 2d 27, 32 n. 16 (D.D.C. 1998); Douglas v. Baker, 809 F. Supp. at

---

[4]   The D.C. Circuit also allows recovery for travel time. Cooper v. U.S. R.R. Retirement Bd., 24 F.3d 1414, 1417 (D.C. Cir. 1994) (compensating attorney travel time at half the base hourly rate). According to the D.C. Circuit's ruling, and accounting for the cost of living adjustment, the hourly fees for travel time are now $78.

137-38. Recovery at EAJA rates, with a cost of living adjustment, is sought for this time. The Plaintiffs are also entitled to recover for the time devoted to the litigation efforts by in-house attorneys such as Mr. Rylander and Ms. Lane.

In assessing the number of hours expended on the litigation, I have exercised "billing judgment" and have ensured that the time claimed is not excessive, redundant, or otherwise unnecessary. Tab 2 contains an itemized listing of each time entry incurred for which recovery is sought, while Tab 3 contains a listing of time spent on this matter for which no recovery is sought.

The following is Faegre & Benson's properly chargeable time incurred by attorneys and paralegals in this action, both for work on the merits and on the fee petition:

> Brian B. O'Neill (partner) – strategy:
>
> > 10 hours at $ 156 per hour = $ 1,560.00
>
> Richard A. Duncan (partner) – assistance in preparing for oral argument
>
> > 1.8 hours at $ 156 per hour = $ 280.80
>
> Elizabeth H. Schmiesing (partner)
>
> > supervising, editing:
> > 6.5 hours at $ 156 per hour = $ 1,014.00
> >
> > travel for argument:
> > 6 hours at $ 78 per hour = $ 468.00
>
> Sanne Knudsen (associate)
>
> > research, drafting, oral argument
> > 212.60 hours at $ 156 per hour = $ 33,165.60
> >
> > travel for argument:
> > 3.0 hours at $ 78 per hour = $234.00

-13-

Colette Routel (associate) – filing assistance

1 hour at $ 156 per hour = $ 156.00

Susan Lahr (paralegal) – obtaining documents

5.2 hours at $ 156 per hour = $ 811.20

David Shriver (law clerk) – research, drafting memoranda

56.20 hours at $ 140 per hour = $ 7,868.00

TOTAL FAEGRE & BENSON, LLP ATTORNEY & STAFF FEES: $ 45,557.60

Jason Rylander (in-house counsel at Defenders of Wildlife)

filing, reviewing pleadings:
18 hours at $156 per hour = $ 2,808.00

Patricia Lane (in-house counsel at The Humane Society of the United States)

reviewing pleadings, preparing standing affidavits
15.9 hours at $156 per hour = $ 2,480.40

TOTAL IN-HOUSE ATTORNEY FEES: $ 5,288.40

**B.     Other Expenses**

The view of this Circuit with regard to costs and disbursements under the EAJA is that the statute allows for recovery of certain out-of-pocket expenses, including reasonable copying costs and filing fees. Action on Smoking and Health v. C.A.B., 724 F.2d 211, 224 (D.C. Cir. 1984); Shu Chen v. Slattery, 842 F. Supp. at 600. Expenses incurred for on-line research on Westlaw and Lexis are also recoverable. Nat'l Ass'n of Mfrs. v. United States Dep't of Labor, 962 F. Supp. 191, 199 (D.D.C. 1997), aff'd, 159 F.3d 597 (D.C. Cir. 1998). See also Oliveira v. United States, 827 F.2d 735, 743-44 (Fed. Cir. 1987) (holding that the EAJA permitted recovery for expenses associated with photocopying, printing and binding of briefs, use of telephone, and

postage and overnight delivery services, but would not permit recovery of expenses incurred in gaining admission to practice before a particular court); <u>Aston v. Sec'y of Health and Human Servs.</u>, 808 F.2d 9, 12 (2d Cir. 1986) (allowing recovery for telephone, postage, travel and photocopying costs).  The costs itemized below were incurred in this case, are ordinarily charged to Faegre & Benson's clients, and therefore, are recoverable here:

| | | |
|---|---|---|
| Copying/binding | | $ 337.50 |
| Postage/deliveries | + | $     4.88 |
| Airfare (for S. Knudsen only) | | $1,247.40 |
| Telephone/facsimile | + | $   10.01 |
| Lexis/Westlaw | + | $ 112.00 |
| Miscellaneous | | $     2.88 |
| United States Parcel Service | | $   73.31 |

TOTAL COSTS: <u>$ 1,787.98</u>

## Application

I hereby apply for attorneys fees and costs in the amount of $ 52,633.98.

/s
Elizabeth H. Schmiesing, MN # 229258
**FAEGRE & BENSON LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000

Subscribed and sworn to before me
this 29th day of September, 2005.

Megan T. Malik
Notary Public Minnesota

My Commission Expires January 31, 2010.