UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| Defenders of Wildlife, American Lands Alliance, Animal Protection Institute, Center for Biological Diversity, Friends of Animals and Their Environment ("FATE"), Help Our Wolves Live ("HOWL"), The Humane Society of the United States, Indigenous Environmental Network, Klamath Forest Alliance, Minnesota Wolf Alliance, RESTORE: The North Woods, Sierra Club, and the Wildlands Project,<br><br>                    Plaintiffs,<br><br>vs.<br><br>Gale Norton, Secretary of the Interior, United States Department of the Interior, Matthew J. Hogan, Acting Director of the United States Fish and Wildlife Service, and United States Fish and Wildlife Service,<br><br>                    Defendants. | Civil No. 1:05CV-01573-ESH<br><br><br>PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR CLARIFICATION OR, IN THE ALTERNATIVE, TO ALTER OR AMEND THE JUDGMENT |

On September 13, 2005, this Court enjoined the United States Fish and Wildlife Service et al. ("Defendants" or "FWS") from allowing any further taking of endangered wolves pursuant to permits unlawfully issued to Michigan and Wisconsin. The injunction was necessary because, contrary to the mandates of the Endangered Species Act ("ESA"), the FWS issued permits under ESA Section 10(a)(1)(A), 16 U.S.C. § 1539(a)(1)(A), without affording the public an opportunity to comment. Through its motion to clarify, or to alter and amend, the FWS is yet again attempting to circumvent the public notice and comment safeguards of the ESA by advancing a new legal theory – the FWS argues that independent authority exists under which non-lethal taking of endangered species is not subject to the substantive or procedural

requirements of the ESA. There is no merit to this contention. The FWS's post-judgment motion is simply an attempt to gain, through the back door, relief that it could not obtain through the front door.

The "independent authority" argument raised by the FWS in its post-judgment motion is not properly before the Court. Relief is neither available under Fed. R. Civ. P. 60(a) ("Rule 60(a)") nor under Fed. R. Civ. P. 59(e) ("Rule 59(e)"). In particular, there has been no clerical mistake warranting relief under Rule 60(a). The Court's September 13, 2005 injunction is clear on its face. Clarification of the scope of the injunction is unnecessary because the FWS has failed to show that independent authority exists for taking endangered wolves without adhering to the safeguards and restrictions of the ESA.

The FWS's motion also fails under Rule 59(e), as it has not advanced any argument that new facts or clear legal error warrant relief under that Rule. There is, therefore, no basis for narrowing the scope of the injunction to allow for non-lethal takes of endangered wolves. In fact, by raising the "independent authority" theory with no factual basis or documentary materials for the Court to review, the FWS's motion presents nothing more than a hypothetical argument amounting to a request for an advisory opinion.

By opposing the FWS's motion, Plaintiffs are not stating an opposition to all non-lethal taking of wolves. Plaintiffs are opposing, however, the FWS's contention that such non-lethal taking is authorized by state cooperative agreements entered into pursuant to ESA Section 6(c), 16 U.S.C. § 1535(c). Plaintiffs also oppose the FWS's use of a post-judgment motion to assert a hypothetical authority to take wolves under a provision of the ESA that was not raised in the underlying case and that is not properly before the Court.

**ARGUMENT**

I.      **THERE HAS BEEN NO CLERICAL MISTAKE WARRANTING CLARIFICATION OF THE COURT'S UNAMBIGUOUS ORDER**

The Court has discretion to correct clerical mistakes pursuant to Rule 60(a).  Ordinarily, courts exercise such discretion when there has been a ministerial mistake such as an error in transcribing the judgment or a computational error in a damage award.  See, e.g., Hale Container Line, Inc. v. Houston Sea Packing Co. 137 F.3d 1455, 1474 (11th Cir. 1998) (concluding that the district court could properly correct a computational error in a damages award because it merely involved a mathematical error and did not involve the substantive rights of the parties).  Relief is also proper under Rule 60(a) to resolve ambiguities in a court's order to ensure that the purpose is fully implemented.  See Burton v. Johnson, 975 F.2d 690, 694 (10th Cir. 1992) (holding that Rule 60(a) relief is proper when the court's order that prisoner was to be "discharged" if new trial not commenced in 90 days was unclear as to whether prisoner was to be released pending new trial or whether charges against him were to be dismissed).

It is well-settled, however, that relief under Rule 60(a) is not proper when such relief would alter the substantive rights of the parties:

> [T]he relevant test for the applicability of Rule 60(a) is whether the change affects the substantive rights of the parties and is therefore beyond the scope of Rule 60(a) or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule. . . . Let it be clearly understood that Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case.  It is only mindless and mechanistic mistakes, minor shifting of facts, and no new additional legal perambulations which are reachable through Rule 60(a).

Matter of West Texas Mktg. Co., 12 F.3d 497, 504-505 (5th Cir. 1994).  See also Pfizer Inc. v. Uprichard, No. 04-2527, 2005 U.S. App. Lexis 18757, *13-14 (3d Cir. August 30, 2005) (quoting Matter of West Texas Mktg. Co. for the same proposition); United States v. Griffin, 782

F.2d 1393, 1397 (7th Cir. 1986) (recognizing that "factual and legal misconceptions, as well as exercises of discretion, may not be corrected under Rule 60(a), while blunders in execution may be").

The FWS argues that relief under Rule 60(a) is necessary to clarify the scope of the Court's September 13, 2005 Order ("Order"). In particular, the FWS requests the Court to clarify whether the injunctive relief granted by the Court's Order precludes Wisconsin and Michigan from taking endangered wolves pursuant to independent authority. There are at least two fatal defects in the FWS's request for Rule 60(a) relief.

First, as discussed below in Section IV, the request for clarification is an empty one – no independent authority exists that would allow Wisconsin or Michigan to take endangered wolves absent compliance with the substantive and procedural safeguards of the ESA Section 10. Because no such independent authority exists, there is no ambiguity in the Court's Order warranting clarification under Rule 60(a).

Second, even if independent authority did exist for the non-lethal taking of wolves under Section 6(c), the relief requested by the FWS under Rule 60(a) is unavailable and improper because it would alter the substantive rights of the parties. Rule 60(a) is not a proper mechanism for altering the substantive rights of the parties or advancing a new legal theory. See, e.g., Matter of West Texas Mktg. Co., 12 F.3d at 504-505 (emphasizing that "Rule 60(a) is not a perpetual right to apply different legal rules or different factual analyses to a case"). In this case, the FWS is simply using Rule 60(a) to advance a new legal argument and to gain relief that the Court has already rejected – namely, to acquire the ability to take endangered wolves without the need for public notice and comment. In other words, faced with the Court's unequivocal decision that the FWS must provide an opportunity for public notice and comment before issuing

4

Section 10(a)(1)(A) take permits, the FWS is now attempting to avoid public input by bypassing the permit process altogether. If the Court were to "clarify" the September 13, 2005, Order in the manner suggested by the FWS, the Court would alter the substantive rights of the parties – Plaintiffs would no longer be afforded the opportunity to comment on the FWS's authorization of non-lethal takes by Wisconsin and Michigan.

Further, the Court cannot clarify its Order to allow non-lethal takes under independent authority without ruling on the merits of whether Section 6(c) state cooperative agreements provide such independent authority. In other words, it is not enough for the Court to merely state that the injunction leaves independent authority undisturbed without the Court ruling on the legitimacy of that alleged independent authority. Any attempt to clarify the Order without reaching the merits of the alleged independent authority to take endangered wolves would simply trigger a dispute among the parties as to whether independent authority under Section 6(c) does in fact exist. Creating such a situation would not further judicial economy. In addition, Plaintiffs would once again be put in the position of seeking injunctive relief to prevent unlawful taking of endangered wolves in Wisconsin and Michigan. And once again, while the legality of such takings was being litigated, endangered wolves would be taken in the interim. Therefore, the clarification sought by the FWS requires the Court to address the merits of whether independent authority does indeed exist pursuant to Section 6(c) while the injunction and corresponding protection of the wolves from unlawful taking is in place.

Because the FWS's requests necessitates a decision on the merits of a newly-advanced legal theory, the relief requested by the FWS goes well beyond the correction of a clerical mistake and would improperly use Rule 60(a) to alter the substantive rights of the parties.

## II. THE FWS HAS PRESENTED NO NEW FACTS OR CLEAR LEGAL ERROR WARRANTING THE AMENDMENT OF THE PREVIOUSLY-ISSUED INJUNCTION

As an alternative to relief requested pursuant to Rule 60(a), the FWS requests relief in the form of a motion to alter or amend pursuant to Rule 59(e). The FWS acknowledges in its motion that relief under Rule 59(e) is proper only if "there is an intervening change in controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice." See Pearson v. Thompson, 141 F. Supp. 2d 105, 107 (D.D.C. 2001). See also, National Ctr. for Mfg. Sciences v. Dep't of Defense, 199 F.3d 507, 511 (D.C. Cir. 2000) (requiring defendants to "show new facts or clear errors of law"). Indicative of the FWS's inability to meet this burden, and of the inappropriateness of using Rule 59(e) to grant relief in this case, the FWS does not even attempt to advance arguments in its motion to satisfy the Rule 59(e) standard.

There is neither an intervening change in controlling law, nor new evidence, nor clear legal error warranting Rule 59(e) relief. Further, the FWS does not assert that Rule 59(e) relief is necessary to prevent a manifest injustice. Any such assertion, even if made, would not be credible given that the FWS could have raised its arguments regarding the existence of independent authority in response to Plaintiffs' motion for preliminary injunction. In fact, in response to Plaintiff's request for injunctive relief, the FWS presented no substantive argument contending that the permits were lawfully issued or that the takes authorized by the permits were otherwise sanctioned by the ESA. No such argument was raised even though the FWS was fully aware of the scope of relief requested by Plaintiffs. The FWS was also fully aware of the temporary consequence that such relief would have on Wisconsin and Michigan's ability to engage in non-lethal take activities. The Court's September 13, 2005, Order was no surprise to any of the parties, as the relief granted simply reflected the relief sought. Because the relief

6

sought and subsequently granted was not a surprise to the FWS, and because the FWS had ample opportunity to advance its current legal argument before the relief was granted, the injunctive relief awarded by the Court in its September 13, 2005 Order cannot be said to work a manifest injustice. Because the FWS has not and can not advance any argument supporting its request to alter or amend the judgment, Rule 59(e) relief is not warranted.

### III. GRANTING THE RELIEF REQUESTED WOULD AMOUNT TO AN ADVISORY OPINION

Through its unsupported factual assertions and vague legal contentions, the FWS is trying to lead the Court into error by asking the Court to bless, as legal, conduct that is presented only in hypothetical terms. The FWS asks the Court to authorize the taking of endangered wolves pursuant to state cooperative agreements even though this issue was neither raised nor addressed in the underlying case, and even though the FWS has not provided any state cooperative agreement for the Court to review as part of the instant motion. Because the FWS's motion requests a legal decision that is not rooted in concrete fact presented for the Court to review, and because granting relief would require the Court to rule on the merits of whether independent authority exists, there is no actual controversy presented and the FWS's motion amounts to a request for an advisory opinion. See Aetna Life Inc. Co. v. Haworth, 300 U.S. 227, 241 (1937) (cautioning that a justiciable controversy "must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts").

### IV. NO "INDEPENDENT AUTHORITY" EXISTS FOR TAKING ENDANGERED SPECIES WITHOUT A PERMIT.

Even if the FWS's motion were properly presented to the Court, the FWS's entire motion is based on a proposition that is unsupported in law and fact. The fundamental basis for the FWS's motion, whether under Rule 60(a) or Rule 59(e), is the contention that independent

7

authority exists for Wisconsin and Michigan to engage in non-lethal taking of endangered species without adhering to the substantive and procedural mandates of the ESA. That assertion is at odds with both the letter and the spirit of the ESA.

According to the FWS, independent authority for taking wolves absent public notice and comment stems from state cooperative agreements established under Section 6(c), 16 U.S.C. § 1535(c). That unsupported assertion is erroneous. Section 6(c) simply allows the FWS to enter into cooperative agreements with states whose conservation programs meet certain criteria. 16 U.S.C. § 1535(c). In addition, states whose conservation programs meet the criteria of Section 6(c) are eligible for federal funding. Id. Congress enacted this mechanism for providing federal funding to certain state conservation programs because of the "congressional realization that a successful endangered species program depends upon a good working relationship with the States." A Legislative History of the Endangered Species Act of 1973, As Amended in 1976, 1977, 1978, 1979, and 1980, at 618 (97th Congress, 2d Session). Despite the desire to coordinate and maintain state efforts in the protection of endangered species, Congress was also cognizant that state programs cannot dilute or diminish federal restrictions governing endangered species. Through Section 6(f), Congress explicitly cautioned that restrictions contained in state conservation programs be at least as stringent as the requirements set forth in the ESA:

> Any State law or regulation respecting the taking of an endangered species or threatened species may be more restrictive than the exemptions or permits provided for in this chapter or in any regulation which implements this chapter but not less restrictive than the prohibitions so defined.

16 U.S.C. § 1535(f). Section 6(f), therefore, informs the lawful scope of Section 6(c) cooperative agreements by making clear that state programs must be at least as restrictive as the federal mandates contained in the ESA. This means that any taking of endangered species

8

pursuant to state cooperative agreements must be at least as restrictive as the provisions of ESA Section 10 that authorize the taking of endangered species. Just as the FWS must demonstrate that takes authorized under Section 10(a)(1)(A) are for "scientific purposes or to enhance the propagation or survival of the species," and that such takes have been subject to public notice and comment as required by Section 10(c), so too must any takes by Wisconsin and Michigan pursuant to a state cooperative agreement adhere to those safeguards. Anything less would diminish the protections afforded by the ESA in violation of Section 6(f).

In other words, neither the substantive limitations nor the public notice and comment requirements of ESA Section 10 can be bypassed by framing the taking of endangered species as an authorization under a state cooperative agreement. Otherwise, the FWS could circumvent the procedural safeguards carefully set forth in the ESA simply by entering into state cooperative agreements. Neither the statutory language, nor the intent and purpose of the ESA, support such a view. See Swan View Coalition, Inc. v. Turner, 824 F. Supp. 923, 938 (D. Mt. 1992) (holding that less restrictive taking provisions under Montana law are preempted by the ESA "based on the clear language of [Section] 6(f) of the ESA combined with the overwhelming priority Congress has given to the preservation of threatened and endangered species").

In this case, even though the FWS asserts that independent authority for non-lethal takes exists pursuant to state cooperative agreements with Wisconsin and Michigan, the FWS has not provided any evidence that those state cooperative agreements were subject to public notice and comment requirements or that the proposed takes satisfy the substantive limitations of Section 10(a)(1)(A) – namely that the takes are for "scientific purposes or to enhance the propagation or survival of the species." The FWS, therefore, has provided no basis for the Court to conclude that state cooperative agreements entered into with Wisconsin and/or Michigan satisfy the

requirements of the ESA and provide independent authority to engage in non-lethal takes of endangered wolves. In fact, the FWS has not even provided state cooperative agreements for the Court to review. The FWS is therefore asking the Court to sanction a course of conduct without reviewing the source of authority for such alleged conduct.

While the FWS's motion states that "Michigan and Wisconsin DNRs have long conducted nonlethal wolf management activities under legal authorities (such as cooperative agreements under Section 6 of the ESA) that are separate from the Section 10 subpermits challenged in this case," see Memorandum in Support of Federal Defendants' Motion for Clarification or, in the Alternative, to Alter or Amend at 3, the FWS provides no basis for this assertion. Contrary to this unsupported assertion, the past conduct of the FWS and the states indicates that those entities do not treat the existence of the state cooperative permit as providing independent authority for non-lethal takes. The actions underlying this case provide a prime example – Wisconsin and Michigan applied for ESA Section 10(a)(1)(A) permits not only for lethal, but also for non-lethal take activities. Those actions are not consistent with the actions of state agencies that have supposedly engaged in non-lethal take activities without permits in the past.

The FWS cites to 50 C.F.R. §17.21, suggesting that it serves as a blanket authorization for state agents to engage in non-lethal take activities. Contrary to the FWS's suggestion, 50 C.F.R. § 17.21 does not, and could not, diminish the statutory requirement that state cooperative agreements must be at least as restrictive as the ESA. It merely provides that states may engage in non-lethal takes in accordance with the state cooperative agreements. See 50 C.F.R. § 17.21 (allowing non-lethal taking of endangered species when a state agent is acting "in accordance with the Cooperative Agreement") (emphasis added). Any takes authorized by the state

10

cooperative agreements, however, must be at least as restrictive as the ESA in order to satisfy the mandates of Section 6(f). Rather than serve as a blanket authorization for states to engage in non-lethal taking of endangered species, 50 C.F.R. § 17.21 simply restricts the takings that can be authorized pursuant to state cooperative agreements to <u>non-lethal</u> takes. A contrary interpretation of 50 C.F.R. § 17.21, such as that suggested by the FWS, contravenes the ESA by short-circuiting its strict prohibitions on taking endangered species and by ignoring the mandates of Section 6(f).

In sum, the FWS presents no factual support for its hypothetical contention that independent authority exists pursuant to the state cooperative agreements that may have been entered into with Wisconsin or Michigan. The FWS also offers no legal basis to support the proposition that Congress intended protection afforded to endangered species be diminished by state cooperative agreements.

**CONCLUSION**

While Plaintiffs do not oppose all non-lethal taking of endangered wolves, Plaintiffs do oppose (1) the FWS contention that authority for such taking exists in Section 6(c) of the ESA and (2) the notion that either Rule 60(a) or Rule 59(e) properly allow the Court to allow such taking in response to post-judgment motions that amount to a request for advisory opinion. For the reasons stated above, the Defendants' Motion for Clarification or, in the Alternative, to Alter or Amend the Judgment should be denied.

Dated:  October 11, 2005

/s/
Jason C. Rylander, DC # 474995
**Defenders of Wildlife**
1130 Seventeenth Street, NW
Washington, D.C. 20036-4604
jrylander@defenders.org
(202) 682-9400

Brian B. O'Neill, MN # 82521
boneill@faegre.com
Richard A. Duncan, MN # 192983
rduncan@faegre.com
Elizabeth H. Schmiesing, MN # 229258
eschmiesing@faegre.com
Colette B. Routel, MN # 0313336
croutel@faegre.com
Sanne H. Knudsen, MN # 0344552
sknudsen@faegre.com
**FAEGRE & BENSON LLP**
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-7000
(612) 766-1600 (facsimile)

Attorneys for Plaintiffs Defenders of Wildlife, American Lands Alliance, Animal Protection Institute, Center for Biological Diversity, Friends of Animals and Their Environment

("FATE"), Help Our Wolves Live ("HOWL"), The Humane Society of the United States, Indigenous Environmental Network, Klamath Forest Alliance, Minnesota Wolf Alliance, RESTORE: The North Woods, Sierra Club, Wildlands Project.

M1:1252848.05

13